**Dwight SMITH, Petitioner-Appellant,**

v.

**Ross MAGGIO, Jr., Warden, Louisiana State Penitentiary, and Attorney General, State of Louisiana, Respondents-Appellees.**

No. 81–3616.

United States Court of Appeals, Fifth Circuit.

Jan. 24, 1983.

Dymond, Crull & Castaing, Edward J. Castaing, Jr., New Orleans, La. (Court-appointed), for petitioner-appellant.

James L. Alcock, Asst. Dist. Atty., 32nd Judicial Dist., Houma, La., for respondents-appellees.

Before GARZA, REAVLEY and GARWOOD, Circuit Judges.

REAVLEY, Circuit Judge:

Petitioner filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He argues ineffective assistance of counsel and denial of his right to adequate appellate review.[1] Smith appeals the dismissal of his petition and we affirm.

## FACTS

Smith was convicted of murder in Louisiana state court in February 1975. The state presented eyewitness testimony showing that Smith shot Robert Matthews while they were engaged in a discussion outside the house of Smith's mother. Smith presented conflicting eyewitness testimony showing that a fight started, and Smith shot Matthews only after Matthews attacked Smith with a knife. The jury rejected this self-defense theory. Smith appealed, and Smith's conviction was affirmed. *State v. Smith*, 316 So.2d 739 (La.1975).

### Ineffective Assistance of Counsel

Appellant asserts a number of failings of retained trial counsel Authemont, consisting of: (1) failure to file pretrial motions, (2) failure to object at trial, (3) failure to investigate an insanity defense and request a *Pate* hearing, and (4) failure to prepare a bill of exceptions for appeal.

---

1. Smith also argues that the jury selection process was unconstitutional. Since Smith did not submit any evidence on the racial composition of the jury venire, this argument fails. *Fulford v. Maggio,* 692 F.2d 354, 359 No. 80–3932 at 822 (5th Cir.1982).

The state argues that appellant's failure to object to the magistrate's report waived his right to appeal. This argument is foreclosed by *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) (en banc).

■ The standards for judging performance of counsel are well-settled:[2]

> We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.

*MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir.1960) (emphasis in original), *adopted on rehearing en banc,* 289 F.2d 928 (5th Cir.), *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961). Counsel's performance must be viewed in the totality of the circumstances. *Marks v. Estelle,* 691 F.2d 730 (5th Cir.1982). Judged against these standards, we think Smith's counsel rendered "reasonably effective assistance."

■ Counsel had no duty to file pretrial motions, because the prosecutor established an open file policy that made the filing of discovery motions or *Brady* requests pointless. Filing a motion to suppress regarding the murder weapon would have been frivolous since Smith's mother gave the investigating officers express permission to enter the house and told the officers where they would find the murder weapon. *See United States v. Baldwin,* 644 F.2d 381 (5th Cir.1981).

■ Smith also alleges that counsel failed to object at trial. In some situations this might indicate ineffective counsel. *See, e.g., Nero v. Blackburn,* 597 F.2d 991 (5th Cir.1979) (failure of attorney to object to prejudicial argument and request a mistrial constituted ineffective assistance). This is not the case here. This was a well conducted trial. The testimony presented was almost exclusively by eyewitnesses. *See Rubio v. Estelle,* 689 F.2d 533 (5th Cir.1982) (where evidence consisted of eyewitness testimony, case was especially difficult to defend). There were no complicated hearsay problems. Counsel cross-examined the prosecution witnesses vigorously, bringing out contradictions in their testimony and advanced the self-defense theory at every opportunity.

■ Smith levels his strongest attack on his counsel's performance in not selecting an insanity defense and not in asking for a *Pate* competency hearing at trial.[3] The record shows that Smith was civilly committed October 7, 1970, suffering from schizophrenia and hallucinations. He was not released until June 6, 1972. The murder occurred July 21, 1972. Smith alleges that counsel was aware of his commitment, but failed to investigate further. Petitioner argues that failure to conduct an investigation, obtain the hospital records and obtain a medical opinion fall below the standards of effective counsel. *See Beavers v. Balkcom,* 636 F.2d 114, 116 (5th Cir.1981) (counsel's failure to investigate, by subpoenaing medical records and interviewing medical personnel, when insanity was the only possible defense *might* constitute ineffective assistance).

Here, however insanity was not the only defense available. Counsel did investigate the insanity defense. While he did not obtain the medical records, he was aware of Smith's commitment, and discussed it with Smith's family. Authemont also discussed the insanity defense with Smith. Authemont stated that he thought Smith was sane and that self-defense was the best theory. This is the type of tactical decision that should not be subjected to the glare of hindsight.[4] *Daniels v. Maggio,* 669 F.2d 1075, 1080 (5th Cir.1982).

---

2. Until recently, in this circuit the standards for retained and appointed counsel differed. *E.g. Fitzgerald v. Estelle,* 505 F.2d 1334 (5th Cir.) (en banc), *cert. denied,* 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675 (1975). However, in light of the Supreme Court's mandate in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the standards for counsel have merged. *Hardin v. Wainwright,* 678 F.2d 589, 592 (5th Cir.1982).

3. We note however, that Smith did not allege a *Pate* violation independent of his counsel claim. Smith's habeas petition, his post-trial memorandum and the magistrate's opinion all indicate that Smith was not alleging a separate claim that he was actually incompetent to stand trial.

4. The record demonstrates that the self-defense theory was plausible, and indeed might have succeeded. The prosecution's witnesses were to say the least, contradictory. Each one had a

Smith advances the related argument that Authemont should have requested a competency hearing. Besides Smith's past history of mental illness, Smith points to his decision to take the stand against the advice of counsel and the trial judge. Smith's motivation was to correct a newspaper account that Matthews was shot with a rifle instead of a pistol. In determining whether counsel should have requested a competency hearing, we have

> evaluated whether counsel for mentally suspect defendants erred in failing to investigate or pursue a defense of insanity or incompetency to stand trial by appraising the facts known and available or with minimum diligence accessible to defense counsel and determining whether those facts raise reasonable doubt as to the defendant's mental condition.

*United States v. Edwards,* 488 F.2d 1154, 1164 (5th Cir.1974) (footnotes omitted).

We think the facts here do not raise sufficient doubt as to Smith's competency. The fact that weighs most heavily in Smith's favor is his recent release from commitment. However, he had been recommended for release long prior to this. Also, Authemont testified that Smith's mother told him that Smith's problems were not mental, but just that Smith got into trouble. Authemont's testimony indicates that Smith discussed and participated in the case, and even provided the names of potential witnesses. While Smith's motivation for testifying may have been unusual, his testimony itself was rational, coherent and supported the self-defense theory. We cannot say that counsel's decision to forego a competency hearing constituted ineffective assistance of counsel.[5]

Appellant also argues that counsel was ineffective in failing to prepare a bill of exceptions. Under Louisiana law, only errors "discoverable by a mere inspection of the pleadings and proceedings," La. Code Crim.Proc.Ann. art. 920 (West Supp. 1982), are reviewable without a bill of exception or assignment of error as it is now called. La.Code Crim.Proc.Ann. art. 844 (West Supp.1982). The short answer to this allegation is that at the sentencing hearing, Authemont, with the consent of the court, withdrew from the case. He was not responsible for preparing a bill of exceptions. However, a more fundamental problem for appellant is our holding that counsel was justified in not objecting at trial. Under La.Code Crim.Proc.Ann. art. 841 (West Supp.1982), no error can be asserted unless it was objected to. Since there were no objections at trial, there were no grounds for a bill of exception.

### Denial of Right of Appellate Review

Smith also alleges that he was denied his right to appeal by the trial court allowing Smith's counsel to withdraw and failing to appoint new counsel until passage of the appeal period. Preliminarily, we note that the failure to prosecute the appeal rests mainly on appellant's shoulders. At the sentencing hearing on April 30, 1973 the court permitted Authemont to withdraw. The court advised Smith that counsel would be appointed for him if he would sign an affidavit of indigency. Smith refused to sign the affidavit. The record reflects that no affidavit was signed until May 22, 1973, over three weeks later. Appellant gave no explanation for this delay.

different version of the incident. On the other hand, the defendant's witnesses, with the exception of the accused's testimony, presented a relatively consistent story that a fight started, and that it was only when Matthews pulled the knife that Smith pulled the pistol. Authemont testified at the evidentiary hearing that he thought he would win the case until Smith took the stand. The accused's testimony, while supporting the self-defense theory, contradicted parts of his witnesses' version of the events

and partially corroborated important parts of the prosecution's case.

5. Our conclusion is supported by a psychiatric examination prior to the habeas hearing. The doctor concluded that

> From what Smith reported to me, it certainly appears that he was acutely aware of the nature of the charges against him, could effectively participate in his defense and assist his attorney at the time...

For the purposes of this appeal we will assume that the cause of this failure rested with the state. In cases in which no appeal was prosecuted, despite the defendant's request, this court has granted relief. *Joseph v. White,* 404 F.2d 322 (5th Cir. 1968); *Cline v. Beto,* 418 F.2d 549 (5th Cir.1969). In this case, however, an appeal was prosecuted on petitioner's behalf. The Louisiana Supreme Court allowed an out-of-time appeal. The court reviewed the record for any errors in the pleadings. *See* Art. 920, *supra.* This is all the review to which appellant was entitled. As the Louisiana court noted, "Defendant was represented at trial by retained counsel who reserved no bills of exceptions *during the course of the proceedings.*" 316 So.2d at 740. Counsel's failure to object (which we have held to be proper) invoked the state's procedural rules precluding review of the merits of petitioner's assertions on appeal. Such rules, absent a showing of cause and prejudice are valid. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Appellant was not denied his right to meaningful appellate review.

The judgment is AFFIRMED.

GARZA, Circuit Judge, dissenting:

I respectfully dissent. I would reverse and order the grant of the Great Writ.

As the facts show, Dwight Smith had just been released from a mental institution, where he had been confined for over a year. Some thirty (30) days after being released into society he committed the murder that he was convicted of. The trial judge at his murder trial was the one that had committed him to the mental institution and the one that authorized his release. These facts were known to his counsel. The failure of the trial judge and of his counsel to order a competency hearing has been condoned by the majority on the grounds that it was trial strategy to go only on a self-defense theory. The magistrate below stated that insanity and self-defense would have been contradictory defenses. I fail to see where these defenses would have been contradictory. Even an incompetent has a right to defend himself. More fundamental to me is the question of whether counsel can waive a competency hearing for a defendant, especially under the facts of the case before us. If Smith was incompetent to stand trial or insane enough to where he could plead a sanity defense, in my view, counsel could not forego this defense. Under the facts known to defense counsel and the trial judge, I find that it was error not to have given him a competency and sanity hearing. Whatever his condition is today, we will never know what his condition was at the time of the murder because no competency or sanity hearing was conducted. This failure to provide him such a hearing looms larger when we look at the record to determine whether Smith received a meaningful appeal.

The trial judge allowed his retained counsel to withdraw at the sentencing hearing and promised to appoint new counsel for him. This was not done, however, until the fifteen (15) days allowed for filing bills of exception or assignments of error had passed. More important, however, the time for filing a motion for new trial had expired by the time counsel was appointed. It was admitted at oral argument that the appointed counsel could have, in a motion for new trial, urged the incompetency of Smith to stand trial and could have developed a record on the need for such a hearing. The failure to appoint counsel for him under these circumstances, in my opinion, prevented Smith from getting a meaningful appeal.

For the above stated reasons I would reverse and grant the writ sought.